IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| LILLIE MCKNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT |
| vs. | ) | (JURY TRIAL REQUESTED) |
| | ) | |
| SOUTH CAROLINA DEPARTMENT OF | ) | 2:24-cv-3213-BHH-MGB |
| MENTAL HEALTH AND | ) | |
| CHARLESTON DORCHESTER | ) | |
| MENTAL HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT AND JURY DEMAND

The Plaintiff, Lillie R. McKnight, by and through her attorney, Bonnie Travaglio Hunt of Hunt Law, L.L.C. hereby complains against the Defendant, as follows:

## NATURE OF THE ACTION

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e, *et seq*.). The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law and state law which rights provide for injunctive and other relief for illegal discrimination in employment.

2. This action is brought pursuant to 42 U.S.C. Section 1981.

3. This action is brought pursuant to the Americans with Disabilities Act.

4. This action is brought pursuant to the Age Discrimination in Employment Act of the United States of America.

5. This action is brought pursuant to Federal Law and the laws of South Carolina.

1

## PARTIES

6.  The Plaintiff is an individual who resided in the State of South Carolina at all times relevant to this action.

7.  At all relevant times to the allegation in this complaint, the Plaintiff was an employee of the Defendant in South Carolina.

8.  At all times, relevant to the allegations in this complaint, the Plaintiff was employed at a facility operated by the Defendant in the State of South Carolina.

9.  On information and belief, Defendant is an entity conducting business and affecting commerce in the state of South Carolina properly within the jurisdiction of the Court.

10. At all times, relevant to the allegations in this Complaint, the Defendant employed more than 20 persons in the State of South Carolina.

11. At all times, relevant to the allegations in this Complaint, the Defendant operated a facility in the State of South Carolina.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter presents a federal question.

13. Jurisdiction of this cause arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Section 2000e-2(a) and Section 2000e-3(a), as amended by the Civil Rights Act of 1991 (CRA Section 91), 42 U.S.C. Section 1981A *et seq.* and the Age Discrimination in Employment Act of 1974 (ADEA), 29 U.S.C. Section 626 *et seq.*

14. Jurisdiction of this Court arises under Title VII 42 U.S.C. 2000 and 42 U.S.C. 1981.

15. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331, 1343 (3) & (4) and 42 U.S.C. §§1983 and 1988 as this case arises under the equal protection

clause of the Fourteenth Amendment to the United States Constitution. As plaintiffs' state law claims derive from the same nucleus of operative facts as her federal claims, this Court has pendent jurisdiction pursuant to 28 U.S.C. sec. 1367.

16.    The Charleston Division is the proper venue for this action pursuant because this is the District and Division in which the Plaintiff resides which a substantial part of the events or omissions giving rise to the claims occurred.

## Procedural Prerequisites

17.    The Plaintiff filed a charge of discrimination against the Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, age discrimination, hostile work environment and retaliation.

18.    The Plaintiff's first charge of discrimination was filed on October 13, 2023 and et forth the following:

I.      *That I am currently employed with the employer.*
II.     *That I have been treated differently based on my age, race, and sex.*
III.    *That I have been subjected to discrimination based on my age, race and sex. That other individuals that were Caucasian, Younger, and/or male were treated more favorably.*
IV.     *A Caucasian worker received a more favorable work assignment.*
V.      *I was ousted from my assignment because I was not male.*
VI.     *Younger employees were not treated as I was or subjected to commentary regarding alleged mental disorders in violation of Title VII and the ADA.*
VII.    *My employer perceived me as disabled and treated differently treatment based on that perception where it did not treat my co-workers the same. I was subjected to commentary regarding the alleged perceived disability, subjected to ridicule and not provided certain assignments not based on my abilities but my disability.*
VIII.   *That younger individuals have been treated more favorably and not discipline or removed from schools based on their age.*
IX.     *That individuals who are not perceived as disabled are treated more favorably, not bullied, not harassed, and not subjected to discrimination.*
X.      *That I am being treated differently based on my race, age, disability, age and formal complaints of discrimination, harassment, and retaliation.*
XI.     *That I am currently being subjected to a severe and pervasive work environment that is attempting to force me to resign my employment.*

3

> XII.    *That I have been discriminated against based on my age in violation of the Age Discrimination in Employment Act.*
> XIII.   *That I have been discriminated against based on my perceived Disability in violation of ADA.*
> XIV.    *That I have been treated differently and discriminated against based on my sex and Race in violation of Title VII.*
> XV.     *That I was subjected to a hostile work environment based on my perceived Disability, Sex, Race and Age in violation of Title VII, Americans with Disabilities Act and the Age Discrimination in Employment Act.*
> XVI.    *That I complained to my employer about my work environment and am being subjected to retaliatory hostile work environment in violation of Title VII, ADA, and the ADEA.*

19.    The EEOC conducted an investigation into the Plaintiff's charge of discrimination.

20.    The Defendant submitted a Position Statement to the EEOC regarding the Plaintiff's Charge of Discrimination on November 21, 2023.  The Position Statement had several False Allegations and False Statements regarding the Plaintiff and her employment.

21.    That the Plaintiff received a right to sue from the U.S. Equal Employment Opportunity Commission on March 7, 2024.

22.    That the Right to Sue set forth the EEOC issues the following determination:

*DETERMINATION OF CHARGE*

*The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.*

*NOTICE OF YOUR RIGHT TO SUE*

*This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge*

*under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)*

*If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 415-2023-02073.*

23.     That fewer than ninety days have elapsed since the Plaintiff received the Right to Sue on the Plaintiff's charge of discrimination.

## FACTUAL BACKGROUND

24.     That the Plaintiff is a resident of the United States and at all relevant times the Plaintiff resided in South Carolina.

25.     That the Plaintiff is an African American female over the age of forty (40).

26.     The Plaintiff was initially hired by the Defendant Charleston Dorchester Mental Health Center on August 2, 2018, as a Mental Health Counselor III.

27.     The Plaintiff was contracted to perform counseling in Charleston County Schools.

28.     The Plaintiff was considered an excellent employee for the first three years of her employment up and until she began to be supervised by Jessica Rojas.

29.     The Plaintiff was assigned to work in several different schools during her employment. The Plaintiff was moved around due the Defendant being short staffed and counselors constantly quitting due to mistreatment/harassment by management.

30.   The Plaintiff was assigned to work at eight different schools during her tenure with the Defendant, Zucker Middle School (2 times), Pepperhill Elementary School, Morningside Middle School, Stall High School, North Charleston High School, Liberty Hill Academy, North Charleston School of the Arts, and Deer Park Middle School.

31.   During the 2018/2019 school year, the Plaintiff was assigned to Deer Park Middle School because no other counselor would agree to work there.

32.   Deer Park Middle School opened in 2017 and had 5 different Counselors assigned by Charleston County School District and Department of Mental Health.

33.   Each counselor requested a transfer or quit due to the mistreatment of the counselors by management.

34.   The Defendant had certain policies in place to protect the children, parents, the counselors and the Defendant.

35.   Many of those policies required consent from parents to treat their children.

36.   In March of 2022, another supervisor, Jessica Rojas, a female, instructed the Plaintiff that needed to treat a patient.  Rojas was treating the child's mother.  The mother refused to provide consent.

37.   Rojas harassed the Plaintiff and instructed her to see the child that the child needed help. The Plaintiff informed Rojas she would not violate policy by seeing a child without the parent's consent.

38.   Rojas directed the Plaintiff to treat the child once a week per the parent's instruction.  The Plaintiff informed Rojas she would not violate policy or the professional requirements of their position as the child's treatment would be dictated by the child's level of care.

39.    Rojas refused to treat the patient herself.  The Plaintiff informed Rojas that she was putting the child, the parent and the Defendant in harms way by not treating the child since the mother refused to give the Plaintiff consent after several calls and emails.

40.    As a result of Rojas directives and refusals to treat the patient, the Plaintiff reached out to Ashley Weiter (QI) to discuss the situation.  Weiter informed the Plaintiff that Rojas should not request that the Plaintiff see the child more frequently at the parents request and that Rojas treating the child was not a conflict of interest.

41.    Several days after the meeting with Weiter, Weiter reached out to the Plaintiff requesting the name of the patent and stated that management wanted to further evaluate the situation and put boundaries in place.

42.    The Plaintiff set a meeting with Rojas to clear the air.  Rojas made several insulting statements regarding the Plaintiff feeling she was not good enough and was pushing the child off on her because of it.

43.    The Plaintiff reached out to another employer of the Defendant to try to resolve the issues with Rojas.

44.    On May 12, 2022, the Plaintiff became aware from a patient that children were having sex in school, recording it, and then air dropping the sex videos to other children.  The Plaintiff reported the information to Rojas.  Rojas informed the Plaintiff not to report the information because it was not a crime.

45.    The Plaintiff reported it to the Principal.  The Principal reported it to the police.  The Principal failed to inform the Police that it was her son who sent out the videos.

46.    The Plaintiff reported the incidents to the police.  As a result of the Plaintiff's report, the Principal was demoted and assigned to another school.

47.     After the Plaintiff's report to the police of a crime the Plaintiff was immediately retaliated against.

48.     In July of 2022, the Plaintiff was informed by Rojas that she was being removed from Deer Park by the Charleston County School District Board. Rojas lied to the Plaintiff as the request was from Joe Williams. Williams had started a slander campaign of the Plaintiff due to the Plaintiff's report to the police and his friend the Principal of Deer Park being demoted.

49.     The Plaintiff informed management that this was unfair treatment by the Defendant because there were no examples of why she was not performing to be transferred.

50.     The Plaintiff was transferred due to alleged bad relationships at Deer Park Middle School. The allegation of bad relationships was in retaliation for her report of a crime to the police.

51.     After the Plaintiff's report she was placed in limbo and was transferred around to other schools to cover those who had left the district.

52.     In February 2023, the Plaintiff was on intermittent leave due to her father dying. The Plaintiff was behind in her productivity as she did not have enough patients for 6 months to treat and the FMLA leave.

53.     Despite being on FMLA, her father dying, Rojas informed the Plaintiff that she was still required to meet productivity numbers or she would be disciplined and fired.

54.     Due to technology issues, the Plaintiff was having problems with completing her notes within the 24 hours that Rojas required. Rojas informed the Plaintiff that technology issues were no excuse. If she could not perform her duties she would be terminated.

55.     The technology issues were due to the Defendant's EMR system being down not any issue the Plaintiff had control over.

56.    The EMR system is known to be inoperable several times per week.

57.    On March 1, 2023, Rojas assigned 30 patients to the Plaintiff that had Progress summaries due immediately.  Rojas was responsible for these patients from December 2022 through March 2023 and have failed to complete any progress summaries while she was responsible for treatment.

58.    The assignment was a violation of the Defendant's policies.  As the Defendant's policies sets forth that the treating clinician is required to complete progress summaries prior to transferring the patient to another clinician.  The Defendant failed and refused to follow its own policies and failed and refused to discipline the previous clinician.  Each of these patients were being treated for Rojas.

59.    Rojas failed to perform the requirements of her position and used the Plaintiff's failure to meet productivity to threaten the Plaintiff.

60.    The Plaintiff realized that Rojas was treating her differently than other Counselors.  The Plaintiff believed that this differential treatment was based on her race.

61.    Rojas demanded the Plaintiff complete the Progress Summaries and complete 23 hours per week of billing even while the Plaintiff was on FMLA. Rojas' expectations were unreasonable and were deliberate to set the Plaintiff up for failure based on her race.

62.    Rojas demanded that the Plaintiff complete her 4 hours of therapy hours per day while out of work taking care of her dying father.

63.    Rojas began to systematically harass the Plaintiff.  Due to the constant texts on the Plaintiff's personal and work phone, constant emails and calls the Plaintiff was unable to accomplish any of the requirements of her position.  Throughout this timeframe, the Plaintiff was on intermittent FMLA caring for her father who was dying.

64.     The Plaintiff's father passed away on April 7, 2023.

65.     On April 18, 2023, the Plaintiff returned from leave after her father's death.

66.     Rojas began excessively texting the Plaintiff regarding her taking leave without Rojas permission.

67.     On April 24, 2023, the Plaintiff met with Rojas for their monthly supervision meeting.  At the time of this meeting, the Plaintiff was caught up on her notes and treatment but her treatment hours were not meeting guidelines.

68.     However, Rojas decided that the Plaintiff needed to be punished for being behind in her notes and sentenced her to 30 days at the clinic.  Rojas and other management regularly used clinic requirements as punishment for any counselor's performance issues, retaliation against the counselor for any reason she saw fit or just to show her authority.

69.     Rojas' actions were to intentionally interfere with the Plaintiff's productivity and further harass her based on her race as she was singling out the plaintiff.

70.     On May 8, 2023, the Plaintiff was on leave.  However, Rojas, continuously texted the Plaintiff demanding that she call Rojas immediately.  The Plaintiff called Rojas who had nothing urgent to inform the Plaintiff of but Rojas was using this action as a way to further create anxiety for the Plaintiff and harass her.

71.     On May 19, 2023, the Plaintiff had an appointment with Rojas.  Rojas was an hour late cutting into the Plaintiff's productivity intentionally.

72.     Rojas further required the Plaintiff to stay for a three hour appointment.  Rojas informed the Plaintiff that the entire management team was talking about her and her inability to be organized.  Rojas further informed the Plaintiff that she had met with other management

and they had determined that she was guarded and defensive. Rojas informed the Plaintiff "I have a trauma history too."

73. Rojas labeled the Plaintiff as having a trauma disorder and began to publish this information to others.

74. On June 1, 2023, the Plaintiff met with Stacy Mathis, the Chief of Staff. The Plaintiff informed Mathis of how Rojas and Gher were the problem-harassing her and treating her differently. The Plaintiff further informed Mathis that Rojas had labeled her as having a trauma disorder.

75. The Plaintiff informed Mathis that Rojas was harassing her, affecting her productivity through that harassment and tormenting her.

76. Mathis informed the Plaintiff that she would have to remain in her current position but suggested that the Plaintiff transfer to Dorchester so that she would no longer be supervised by Rojas and Gher.

77. On June 2, 2023, Rojas was sending emails and texts demanding that the Plaintiff tell her when she was taking leave. The Plaintiff had previously informed Rojas that she would be taking leave when school was out to regroup and take a break from the negativity at work.

78. On June 5, 2023, the Plaintiff emailed Mathis informing Mathis that she wished to move to the Dorchester Clinic. Mathis instructed the Plaintiff to check vacancies and apply.

79. On June 12, 2023, the Plaintiff texted Rojas and informed her that she was sick. The Plaintiff was out sick on June 12th and June 13th.

80. On June 13, 2023, the Plaintiff reported to Rojas immediate supervisor MikellAnn O'Mara that Rojas was inappropriate, harassing her, causing anxiety and preventing her from

completing her work as required by the Defendant. The Plaintiff requested to be moved to another team.

81.    The Plaintiff informed O'Mara that Rojas was looking for validation from the Plaintiff and Rojas was harassing her because the Plaintiff was failing to provide the validation.

82.    O'Mara informed the Plaintiff that she would meet with Gher and get back to her.

83.    O'Mara informed the Plaintiff that Gher wanted to meet with her. Gher was not happy with the Plaintiff's complaints to upper management.

84.    On June 15, 2023, Rojas texted the Plaintiff and informed her that she knew the Plaintiff was out sick. The Plaintiff informed Rojas that she was not out sick on the 15th but had been out sick 2 days prior.

85.    Rojas admonished the Plaintiff because the Plaintiff had texted her on Rojas work phone and Rojas stated she does not use that phone.

86.    On June 20, 2023, Rojas informed the Plaintiff that since they were having communication issues the Plaintiff was now required to call Rojas instead of text.

87.    The Plaintiff was the only employee required to call which was a further way to harass the Plaintiff and treat the Plaintiff differently. The Plaintiff had always texted Rojas on her work cell phone previously, Rojas would respond and there was no issue. However, Rojas was now claiming the Plaintiff had failed to properly notify her.

88.    The Plaintiff had agreed to work in the Mobil Crisis Center for the summer. The Plaintiff and the head of the Mobile Crisis Center that the Plaintiff would work Tuesdays and Thursdays from 12:00-5:00 pm.

89.    The Plaintiff worked in Mobile Crisis for several weeks.

90.    After several weeks, Rojas emailed the Plaintiff and informed her that she would be required to arrive at the Mobile Crisis Center at 8:30 am instead of 12:00 pm and that Mobile Crisis was requesting.  The Plaintiff accused Rojas of retaliation and informed the Plaintiff she could maintain her original hours.

91.    On June 21, 2023, The Plaintiff informed Rojas that she was retaliating against the Plaintiff because the Plaintiff had filed a grievance against her and that her actions were not appropriate.

92.    After the Plaintiff's accusation of retaliation, Rojas informed the Plaintiff that she would be permitted to work the schedule that her and the supervisor of Mobile Crisis had agreed to.

93.    Rojas had not harassed anyone else regarding their time in the Crisis Center.

94.    On June 29, 2023, the Plaintiff met with Gher and O'Mara regarding Rojas harassment and inappropriate behavior.  The Plaintiff addressed several of her concerns including the hostile work environment, discrimination and harassment.  The Plaintiff informed Gher of the inappropriate actions being taken by Rojas.  Gher informed the Plaintiff that her productivity was low.  The Plaintiff responded to Gher with an explanation regarding productivity, the constant changes in location, the hours at the clinic, the death of her father, FMLA and other issues.  The Plaintiff further informed Gher despite the numbers she expected to be treated with respect.

95.    During the meeting, Gher informed the Plaintiff that he would assign her to the North Charleston High School.

96.     On July 2, 2023, O'Mara sent an email to the Plaintiff requesting if she could place patients from the North Charleston High School on her calendar.  The Plaintiff informed O'Mara that she was ready to receive those patients.

97.     In July and August, the Plaintiff took three weeks of Family Medical Leave in order to escape the hostile work environment created by the Defendant.

98.     On August 22, 2023, the Plaintiff received a call from a co-worker informing her that the Defendant was removing her from North Charleston High School.

99.     The Plaintiff requested that Ravyn Williams become her new supervisor.  Williams had a reputation for being a detached supervisor allowing employees to do their jobs without harassment or micromanagement.   However, when the Plaintiff began to be supervised by Williams, Williams began to systematically harass the Plaintiff as Rojas had done.

100.    The Plaintiff emailed her new supervisor, Ravyn Williams.  Williams informed the Plaintiff that she would not be allowed to serve at North Charleston High School but refused to inform the Plaintiff why.

101.    Williams informed the Plaintiff that she would be moved to Stall High School and would serve their as the full time counselor.

102.    After the Plaintiff was transferred to Williams team, Rojas and Williams began to have their team meeting together.

103.    On August 23, 2023, the Plaintiff reported to Stall High School and learned that no arrangements had been made for her to serve full time.  The School Administrators informed the Plaintiff that they were not informed about her being assigned to the school and did not have the ability to accommodate her.

104.    The Plaintiff emailed Williams who then informed the Plaintiff that she would only be at Stall two days a week and then at the Clinic for three days a week.

105.    The Plaintiff was informed by Brandy the younger counselor at Stall High School that she was aware of the Plaintiff's complaints and issues with their employer.

106.    The action of not placing the Plaintiff in a school full time would prevent the Plaintiff from meeting her productivity and was in retaliation for her complaints regarding the hostile work environment, harassment and discrimination.

107.    While the plaintiff was required to work at Stall she worked with a younger individuals who acted as the Plaintiff's supervisor and directed the Plaintiff that she is not permitted to make her own schedule, schedule patients and no one else was permitted to come to her directly they were required to go through her.  Brandy insisted that all communications go through her.  She used this requirement to harass the Plaintiff.

108.    Williams harassed the Plaintiff regarding time off and made the Plaintiff follow a different procedure than other employees.  The Plaintiff was required to perform actions that other employees were not required to perform to further the differential treatment, retaliatory hostile work environment, and  to have the Plaintiff terminate her employment or her be terminated by management.

109.    The Plaintiff was unable to properly see patients at Stall due to the failure to provide her an office and proper facilities to see patients.  The Defendant failed to provide her the ability to properly see patients from August until October.

110.    On September 1, 2023, the Plaintiff filed a harassment/hostile work environment complaint regarding Rojas and Gher's treatment and their alleged diagnosis that the Plaintiff was suffering from a mental health disorder.  The complaint set forth the following:

*Dear Ms. Brush,*

*I am reaching out to you for assistance in a very disturbing situation. I have been harassed and discriminated against by Jessica Rojas and Dave Gehr due to a perceived mental health disorder. This harassment and discrimination have created a hostile work environment and has impacted my physical and mental health. I feel that I have done everything in my power to resolve the situation by talking to upper management and requesting support. Jessica has diagnosed me with low self-esteem, trauma disorder and she stated that I am guarded and defensive. She shared that Dave Gehr has the same opinion of me. Jessica and Dave have used these diagnosis and character assassinations to invalidate me and treat me as if I am unstable and incompetent. After speaking with Stacy Mathis, Mikellann Omara, and Dave Gehr about the harassment, I was assigned to another team and school. I found out by accident from another coworker that my school assignment was changed and I will not be assigned to NCH as promised. I emailed Ravyn Williams and she confirmed that I would not be assigned to NCH but I will be at Stall as the 2nd therapist. Although I wasn't given the respect of informing me of this change. I was okay with it, as I have been asking to go to Stall for the past 2 years. In the past I was told that DMH does not have enough therapist to justify having 2 therapist at Stall when there were many schools that do not have therapist. Ravyn emailed me later to inform me that I will only be at Stall 2 days per and will have to come to the center 3 days per week. I do not have an office at Stall and was told by the administrators that they do not have any area that they could make into an office for me. I asked Ravyn why this change was made but she was not able to give me an answer. I received an email from Mikellann stating that the district is deciding which schools they need therapist at. This does not explain why I do not have a full time school assignment as many of our schools are vacant.*

*When I met with Dave Gehr on June 29, 23, it was clear that he was not happy about me complaining about Jessica, as he validated some of my concerns and took back his validation by saying "but" Your productivity and CD rate have been low for months. It came across that Dave was saying that I deserve the disrespect and harassment that I was experiencing because I had gotten behind on my work.*

*I have always texted Jessica when I am going to be out. On a couple of occasions, Jessica did not read her text messages and she blamed me for this. Jessica told me that she does not use her work phone and wanted me to communicate with her on her personal phone. Dave supported Jessica by telling Jessica to require me to call her when I am out and I was not allowed to text when I am out. This was not a requirement for other clinicians but was put in place for me because Jessica does not read her text messages. Dave shared that he does not use his work phone either, therefore it is acceptable for Jessica to require me to call her. I was not comfortable calling Jessica because she often forgets or pretends to forget and makes accusations without checking facts. Jessica has Jessica has abused her power by putting in leave days for me when I was working. Neither Jessica or Dave is able to explain to me why they think I no show/no call when I am out. I have never in my work history been out of work without informing my supervisor.*

*As of today, I do not have a school assignment and no clear explanation as to why. Although, Jessica is no longer my supervisor, Dave is retaliating against me for*

*using my voice to advocate for myself. I believe this decision to pull me out of the school was made as a way of punishing me.*

*I recently went through a major crisis when my dad died after being injured at a nursing facility, where I took him for 2 weeks of respite and I was on intermittent FMLA. When I returned to work after burring my dad, I was attacked by Jessica with accusations of me taking time off without telling her. Jessica began texting me through the day demanding information about students that I did not know. I explained to Jessica that I just came back to work and had a lot to catch up on, therefore, I could not give her the answers she wanted right then. Jessica continued texting me on both my work and cell phone causing anxiety and distractions from getting my work caught up. I received constant text from Jessica almost daily about things that were not urgent. It seemed that every time she had a thought, she texted me. When I met with Jessica for supervision in April, I addressed the way she has been treating me and how insensitive she was towards me after my father's death. Jessica shared that Dave is constantly asking her questions about me and she becomes anxious when she doesn't know the answer.*

*Last year, May, 22, I reported an illegal incident that took place at Deer Park Middle School which involved the principal's son. As a result of me reporting this incident, I was labeled as divisive and not a team player by the school administrators. I was removed from Deer Park Middle and placed in a school where I could not meet my productivity requirements.*

*In June, 2022 I met with Dave and Jessica and they shared with me that Joe Williams from CCSD requested that I be removed from Deer Park Middle. This request was made based on Mr. Williams labeling me as divisive, and stated that I am not a team player, I do not follow protocol, and I purposely withhold communication. I asked Dave to share what examples Mr. Williams gave him to support his characterization of me. I explained that if I am to grow and improve, it is important for me to know what I did. Dave stated he did not know because he didn't ask. I am positive that this request was made because I made a police report about the incident. I followed protocol by emailing Jessica and Dave about the situation and did what I was advised to do, yet, I was not supported when district personnel made these statements about me. I was placed at LHA and only 12 to 15 students on my caseload. Prior to this, I requested to be moved from Deer Park several times and was denied, but when the request was made by Joe Williams, with defaming comments about my character, I was moved. I have never met Joe Williams or had any conversations with him, therefore he knows nothing about me. Joe Williams was supporting his staff in their wrong doing, yet Dave would not support me in doing what I was required to do. Dave shared that the comments were made by other CCSD staff at Deer Park Middle and Joe was the person who relayed the message and requested my removal. I was not informed of who the other staff members were or what the situation was that resulted in these comments being made, but this all happened after the principal at Deer Park lost her position. I have never had any conflicts with teachers or any other staff member at Deer Park Middle except the principal.*

*In March of 2023 I was placed at Zucker Middle School and had over 35 patients transferred to my caseload with the PS due. Previously, we were required to*

*complete PS before transferring a chart to another clinician, but I was not given that curtesy.*

*I've worked for DMH for 5 years and have enjoyed my job. I have been very successful in the past with CD rate and productivity requirements. This fall I had frequent technology issues that played a role in my CD rate being low. By the time I got back from bereavement leave, I was caught up on my clinical notes. I was forced to go to the clinic for a week as a punishment for being behind previously. This was a total waste of my productivity time. At first Jessica told me I had to go to the clinic for 30 days, then she changed it to 3 weeks, later she changed it to 2 weeks.*

*In conclusion, I am disappointed that anyone who works in the mental health field could be so cruel and disrespectful towards an employee. Dave and Jessica have abused their power by using it to torment me and try to tear me down. I am required to treat my patients with dignity and respect at all times, yet I am treated with total disrespect by my employers. I would like to resolve this situation quickly and be assured that I will no longer be subjected to harassment by David Gehr or anyone else at DMH. I am asking that I be assigned to a school, and if that is not an option, please allow me to work with the DJJ program or transfer to the Dorchester clinic. Thank you in advance for your consideration in sensitive matters. I have documentation of more specific time frames and other issues and will share them if you need me to. I look forward to talking with someone and hoping we can come up with an amicable resolution.*

111. The Defendant was well aware of David Gehr's history of harassing Black female employees as there were several grievances filed against him that were never resolved or addressed. Bullying is rampant by management in the Plaintiff's department.

112. On September 13, 2023, the Plaintiff was required to meet with Williams. During this meeting the Plaintiff asked why she was not allowed to work at North Charleston High School as promised. The Plaintiff was informed that the Defendant and the School wanted to place a Black male in that position.

113. On October 10, 2023, the Plaintiff sent an email to Ravyn Williams stating the following: Good morning Ravyn, I'm following up with you regarding my current school assignment. You shared that CCSD is requesting a black male at NCH and that you have hired someone. I need to know what the timeframe is for this transition. I also

want to share that the arrangement you all made for me to be at Stall 2 days is not working well. I'm facing a lot of barriers to meeting productivity as I have no office space, no PowerSchool access and no phone which means I'm dependent on school staff to find students. This is not easy because I'm infringing on other people's dime. When I find my patients, I'm having to find a private location to see them. I have no place to lock up my purse and confidential documents so, I'm having to walk around with my backpack all day which is causing me neck and back pain. The nurse office space that I've been using is shared with Fetter, MUSC & 2 girls who come to pray every day. Was the decision to have a black male at NCH made by CCSD or DMH?

I look forward to talking soon to find a resolution.

114.    Ravyn Williams responded to the Plaintiff: "It was a preferred request but not set in stone. Let me look at some things and get back to you for a resolution." After sending that email another email was sent in the afternoon by Williams stating the following: "I wanted to give you a mini update. CCSD is aware and on it about having a permanent office space for you. Please just hang tight a little. You are appreciated. Also you PCH log has been adjusted because you were on FMLA most of August"

115.    The Plaintiff responded to Willaims with the following: "Thanks Ravyn, I'm trying to be patient but this situation is causing me a lot of unnecessary stress and anxiety not to mention how it's affecting my health. This is going to lead to more issues concerning my productivity because I've been told that there will be no excuses for not making productivity. Also, the reason that I'm given for this situation is because I am not a black man which is discriminatory. I'm not understanding why it's okay to have a full time white

19

female at Stall which has a larger black and Hispanic population but I'm not allowed to be full time at North Charleston High because I'm not a black male. I understand that you aren't the one making this decision but it's not adding up."

116.    On October 11, 2023 Williams responded to the Plaintiff with the following: "SO I was going to let you know tomorrow, but decided to keep you at NCH full time since you have your office set up and all of the issues you are having at Stall. I will need you to continue to see the kids there until I can get the new person acclimated to Stall. Again thank you for all you do"

117.    On October 13, 2023, the Plaintiff informed Williams that due to management's arrangement that she serve Stall High School she was not given the opportunity to meet the Defendant's productivity.

118.    The Plaintiff further informed Williams that she was experiencing neck and back pain due to the fact that she was required to carry her medical records and laptop continuously due to the Defendant's failure to provide her an office.

119.    The Plaintiff further informed Williams that the failure to allow her to serve at North Charleston High School was discrimination.  The Plaintiff was well aware that they were allowing a young white female to serve at Stall who had a much larger portion of African American Student.

120.    After making the discrimination complaint to Williams, she informed the Plaintiff she would be allowed to serve at North Charleston High School.

121.    The Plaintiff was assigned to North Charleston High School and immediately assigned 30 patients who had Progress Summaries due immediately.  These actions were again in retaliation for her complaints and were intentional to affect her productivity.

20

122.  The Plaintiff resigned on November 29, 2023 due to the retaliation for her complaints regarding race discrimination and hostile work environment.

123.  During the Plaintiff's employment, the Plaintiff suffered discrimination based on her race, age, perceived disability, retaliation for her complaints and hostile work environment in violation of the Defendants' policies and procedures and the law.

124.  That each of the reasons provided by the Defendant for not fixing the Plaintiff's work environment was meant to harass the Plaintiff, harm the Plaintiff, and retaliate against the Plaintiff.

125.  That the Defendant wrongfully discriminated against the Plaintiff based on a perceived disability when they diagnosed her with a mental disorder when at no time had they evaluated her or treated her.

126.  That Defendant wrongfully discriminated against the Plaintiff in violation of Title VII 42 U.S.C. 2000 and 42 U.S.C. 1981

127.  That each of the reasons presented by the Defendant was pretextual.

128.  Defendant's actions described herein were intentional and inflicted upon Plaintiff severe mental and emotional distress.

129.  As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

130.  That the Defendant is the direct and proximate cause of injury to the Plaintiff.

131.  That the Plaintiff was issued certain policies and procedures by the Defendant.

132. The Defendants violated the policies and procedures by failing to follow the actual policies in place against discrimination, hostile work environment and retaliation.

133. That as a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

134. Defendant engaged in policies and practices which willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of her race in violation of Title VII and 42 U.S.C. 1981.

135. That the Defendant, treated the Plaintiff significantly differently based on her race.

136. That the Plaintiff treated Caucasian coworkers more favorably.

137. That the Defendant's actions towards the Plaintiff violated the law.

138. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

139. That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's race, the Plaintiff:

    a.    suffered severe emotional distress;

    b.    suffered future lost wages and future lost benefits;

    c.    suffered economic damages;

    d.    Loss of employment;

    e.    Loss of Future employment;

    f.    incurred attorney fees for this action;

    g.    incurred costs of this action; and

    h.    will incur future attorney fees and costs.

22

140.    That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

141.    That the Defendant evaluated the plaintiff differently based on her complaints.

142.    That the Plaintiff's employer discriminated against the Plaintiff based on her race complaints.

143.    That the Defendant is the proximate and direct cause of damage to the Plaintiff.

144.    Pursuant to 42 U.S.C. Section 1981A, Plaintiff also seeks compensatory damages including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

145.    Pursuant to 42 U.S.C. Section 1981A, Plaintiff also seeks to recover punitive damages from Defendant for discriminating against Plaintiff with malice or with reckless indifference to Plaintiff's federal protected rights.

146.    Plaintiff seek all back pay and fringe benefits to which she is entitled under 29 U.S.C. Section 626(b), as well future damages and liquidated damages under the act.

147.    As Plaintiff is seeking damages under 42 U.S.C. 1981A and 29 U.S.C. Section 626(b) Plaintiff also demands a jury trial as to all claims properly tried to a jury pursuant to 42 U.S.C. Section 1981(A)(c)(1) and pursuant to 29 U.S.C. Section 626 (c)(2).

148.    Pursuant to 42 U.S.C. Section 1988(c) and 42 U.S.C. Section 2000e-5(k), Plaintiff seeks her attorney's fees in bringing this action, including expert witness fees, and further seeks her costs associated with bringing this action pursuant to 28 U.S.C. 1920 of the Federal

Rules of Civil Procedure, along with prejudgment and post-judgment interest pursuant to the law.

**FOR A FIRST CAUSE OF ACTION**

**RETALIATION FOR COMPLAINTS REGARDING RACE DISCRIMINATION IN VIOLATION OF TITLE VII AND 42 U.S.C. 1981**

149. That Paragraphs one (1) through one hundred and forty eight (148) are hereby incorporated verbatim.

150. That the Plaintiff participated in a protected act when she reported racial discrimination, racial harassment, and hostile work environment.

151. The Plaintiff and her supervisor clearly reported the discrimination, harassment, and retaliation she was suffering on several occasions as documented above.

152. That the Defendants allowed the Plaintiff to be discriminated against based on her race in violation of the Defendants' own policies and procedures.

153. That the Plaintiff reported the discrimination. That the Defendant failed and refused to correct the behavior. That the behavior became worse after the Plaintiff's reports.

154. That the Defendant allowed the Plaintiff's supervisor to treat Caucasian employees more favorably without repercussions.

155. That the Plaintiff was constructive discharged from her employment based on the hostile work environment. The Plaintiff's claims for Constructive discharge only fall under 42 U.S.C. 1981.

156. That the Plaintiff was further subjected to worse behaviors after she complained to upper management. The Plaintiff was clearly bullied as a result of being an African American and performing all aspects of her positions.

157.  That the reasons provided by the Defendants for the actions against her, changing the terms and conditions of her employment and discipline, were pretextual and created by others who discriminated against the Plaintiff.

158.  That the Defendants discriminated against the plaintiff based on her race.

159.  That the Defendants took adverse employment action against the Plaintiff by:

    (a)  Failing to protect the Plaintiff from a Racially Hostile work environment; and

    (b)  Refusing to enforce its own policies concerning discipline of employees engaging in harassing comments.

160.  That the Defendants subjected the Plaintiff to discrimination in violation of the law.

161.  That as a result of the Plaintiff's complaints the Plaintiff suffered retaliation for each of her complaints.

162.  As a result of the Plaintiff's complaints regarding discrimination based on her Race, and hostile work environment based on her previous complaints the Defendant retaliated against the Plaintiff.

163.  The Defendant's actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

164.  As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

165.  That the Defendant is the direct and proximate cause of injury to the Plaintiff.

166. That the Plaintiff is entitled to an award of damages from the Defendant. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII and 42 U.S.C. 1981.

## FOR A SECOND CAUSE OF ACTION
## RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

167. That Paragraphs one (1) through one hundred and sixty six (166) are hereby incorporated verbatim.

168. That the Plaintiff was an employee according to the law of the State of South Carolina, Federal Law including but not limited to Title VII and 42 U.S.C. 1981.

169. The Defendants are employers within the applicable State and Federal Laws.

170. The Plaintiff was subjected to differential treatment based on her race.

171. The Plaintiff was not treated fairly or equally as other Caucasians.

172. That the Plaintiff complained of discrimination based on her race.

173. That as a result of the Plaintiff's complaints the Plaintiff suffered retaliation for each of her complaints.

174. As a result of the Plaintiff's complaints regarding discrimination based on her Race, and hostile work environment based on her previous complaints the Defendant retaliated against the Plaintiff by changing the terms and conditions of her employment and inflicting and creating a retaliatory hostile work environment.

175. The Defendant's actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

176. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering,

mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

177.   That the Defendant is the direct and proximate cause of injury to the Plaintiff discriminating against her based on her race.

178.   That the Plaintiff is entitled to an award of damages from the Defendant.  That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII and 42 U.S.C. 1981.

## FOR A THIRD CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT AND CONSTRUCTIVE DISCHARGE IN VIOLATION OF 42 U.S.C. 1981

179.   That Paragraphs one (1) through one hundred seventy eight (179) are hereby incorporated verbatim.

180.   That the Plaintiff was an employee of the Defendants.

181.   That the Defendants are employers in accordance with 42 U.S.C. 1981.

182.   Each and every action taken by the Defendants' employees instituted a work environment that no reasonable person would subject themselves to.

183.   That the Defendants subjected the Plaintiff to a hostile work environment.

184.   That the Plaintiff's hostile work environment was in retaliation for her complaints.

185.   The Plaintiff's hostile work environment was continuous and inflicted such emotional distress upon the Plaintiff she was constructively discharged from her employment.

186.   That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

187.   The Plaintiff was subjected to discrimination based on her Race.

188.   That the Defendant failed and refused to address the situation.

27

189.  As set forth above the Plaintiff was harassed on a daily basis by her direct supervisor who intentionally and purposefully subjected to a severe and pervasive work environment.

190.  That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's Race.

191.  That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff.

192.  That the Plaintiff has been damaged as a result of the Defendant work environment.

193.  That the Defendant is the direct and proximate cause of damage to the Plaintiff.

**FOR A FOURTH CAUSE OF ACTION**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**

194.  That paragraphs one through one hundred and ninety three (193) are hereby incorporated verbatim.

195.  That the Plaintiff was subjected Age Discrimination while employed with the Defendant.

196.  That the Defendant, treated the Plaintiff significantly differently based on her age. That younger individuals were permitted to commit much more agregious acts and were not disciplined, suspended or terminated including but not limited to harassing other employees, failing to attend meetings, failing to keep appointments, failing to answer calls, etc.

197.  That a younger white female was permitted to work a full case load where the Plaintiff was only permitted to work a part time schedule which affected her productivity.

198.  That the Defendant, treated the Plaintiff significantly different than it treated younger employees. That the Defendant did not discipline younger employees for actions that would have been terminable offesnses. That the Defendant treated younger employees

more favorably with better assignments, returned to work, bigger raises, better evaluations and no discipline.

199.    That the Defendants' treatment of the Plaintiff was so hostile the Plaintiff was forced to report the work environment to HR.

200.    The Defendant threatened the Plaintiff with significant discipline in retaliation for her complaints regarding discrimination.

201.    That the Defendant's actions towards the Plaintiff violated the law.

202.    That the Defendant is the direct and proximate cause of damage to the Plaintiff.

203.    That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's age, the Plaintiff:

    a.    suffered severe emotional distress;

    b.    suffered future lost wages and future lost benefits;

    c.    suffered economic damages;

    d.    Loss of employment;

    e.    Loss of Future employment;

    f.    incurred attorney fees for this action;

    g.    incurred costs of this action; and

    h.    will incur future attorney fees and costs.

204.    That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

**FOR A FIFTH CAUSE OF ACTION**

## DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

205.    Paragraphs one (1) through two hundred and four (204) are hereby incorporated verbatim.

206.    The Defendant is an employer as defined in ADA.

207.    That the Plaintiff is an employee as defined by the ADA.

208.    That the Plaintiff was considered an exemplary employee.

209.    That while he has been employed with the Defendant, the Plaintiff has been able and has performed her job duties in a satisfactorily level of the Defendant.

210.    That during the Plaintiff's employment the Defendant's employees determined that they believed that the Plaintiff suffered from a trauma disorder.  As a result of their diagnosis, they began to treat the Plaintiff differently and subject her to discrimination and a hostile work environment based on that inappropriate and inaccurate diagnosis.

211.    The Plaintiff's direct supervisor specifically informed the Plaintiff that she had a mental disorder.  The Plaintiff's direct supervisor harassed the Plaintiff with all intents and purposes to see how far she could push the Plaintiff and create a hostile work environment.

212.    That as a result of these actions the Plaintiff began to suffer from severe anxiety.  The Plaintiff reported the actions of her supervisor to the Defendant.

213.    The Defendant failed and refused to correct the situation and allowed the Plaintiff's supervisor and others to harass her.

214.    That the Defendant perceived the Plaintiff as disabled and wanted to find any reason to terminate the Plaintiff's employment.

30

215.    That the Defendant considered the Plaintiff's disability or perceived disability when considering any and all employment decisions.  The Plaintiff was subjected to a hostile work environment and discrimination that no reasonable person would have continued to suffer.

216.    That the Defendant treated younger non-disabled employees more favorably.

217.    That the Defendant violated its own policies and procedures when it allowed employees to harass the Plaintiff based on a perceived disability.

218.    That the Defendant discriminated against the Plaintiff based on her disability, record of disability, and or perceived disability.

219.    That the Defendant is the proximate and direct cause of damage to the Plaintiff.

220.    That any and all reasons offered by the Defendant as a reason for the Plaintiff's is pretextual.

221.    That the Plaintiff has suffered severe emotional damages as a result of the Defendant's discrimination against the Plaintiff.

222.    That the Plaintiff was subjected to discrimination based on consideration of her disability, the Defendant's perception of the Plaintiff's disability, or in consideration of the Plaintiff's disability, the Defendant violated the ADA.

223.    That as a direct result of the Defendant's violation of ADA the Plaintiff has suffered:

    a.    Lost wages and lost benefits;

    b.    Future lost wages and Benefits;

    c.    Economic damages;

    d.    Economic hardship;

    e.    Lost wages;

31

      f.   Suffered anxiety, humiliation and emotional damages.

224.   That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to the ADA for the Defendant's discrimination against the Plaintiff based on his disability.

## **PRAYER FOR RELIEF**

WHEREFORE plaintiff prays that this Honorable Court:

A.  Accept jurisdiction over this matter, including the pendent claim;

B.  Empanel a jury to hear and decide all questions of fact;

C.  Award the Plaintiff lost wages, future lost wages, lost benefits and future lost benefits;

D.  Award to plaintiff compensatory and consequential damages against the defendant;

E.  Award to plaintiff punitive damages against the defendant for their malicious and spiteful pattern of age and race discrimination;

F.  Award to plaintiff All damages available to the plaintiff damages against the defendant for their malicious discrimination against the plaintiff in violation of the Americans with Disabilities Act, Age Discrimiantion in Employment Act, Title VII and 42 U.S.C. 1981;

G.  Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter;

H.  Award all damages available to the Plaintiff pursuant to Federal and State Law;

I.  Permanently enjoin the defendants, their assigns, successors, agents, employees and those acting in concert with them from engaging in sexual discrimination, disparate treatment or retaliation against plaintiff and

J.  Enter any other order the interests of justice and equity require.

HUNT LAW LLC

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
HUNT LAW LLC
4000 Faber Place Drive, Suite 300
North Charleston SC 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709

Dated: May 24, 2024